Opinion filed July 13, 2006




















 
 
 The Court on this day, September 7, 2006, has withdrawn this opinion
 and judgment dated July 13, 2006, and substituted the opinion and judgment
 dated September 7, 2006.
  
 
 







 
 
  
 
 




Opinion filed July 13, 2006

 

 

 

 

 

 

 

                           In The

                                                                              

    Eleventh Court of Appeals

                                                                 ____________

 

                                                          No. 11-05-00022-CR 

                                                     __________

 

                                 DAVID
EDWARD MYERS, Appellant

                                                             V.

                                        STATE
OF TEXAS,
Appellee

 



 

                                         On
Appeal from the 230th District Court

                                                          Harris County,
Texas

                                                   Trial
Court Cause No. 986060 

 



 

                                                                   O
P I N I O N

 

David Edward Myers entered a plea of guilty to the
felony offense of possession of cocaine weighing more than four grams but less
than two hundred grams.  The trial court placed
appellant on deferred adjudication for six years.  In two points of error, appellant argues that
the trial court erred in denying his motion to suppress because the State
failed to demonstrate that probable cause existed for his warrantless arrest based
either on his expired inspection sticker or on a confidential informant=s tip. 
We affirm.

Background Facts








At the hearing on appellant=s
motion to suppress, Officer R.R. Romano testified that he had been with the
narcotics division of the Houston Police Department for 20 years.  A confidential informant called Officer
Romano and told him that appellant was trafficking in narcotics; appellant had
called the informant about some cocaine. 
Officer Romano had successfully used information from the informant ten
to fifteen times in the past and considered the informant to be both credible
and reliable.

Officer Romano asked the informant to set up a
meeting with appellant to have appellant 
deliver six ounces of cocaine to the informant.  They agreed on the location for the delivery
and that the delivery would be early in the afternoon of April 28, 2004.  The informant described appellant as a
forty-year-old white male, weighing two hundred pounds, six feet tall, with
thin hair, and said that appellant would be driving a four-door green Acura
Legend.  The informant told Officer
Romano that appellant would be leaving from his residence at the Saint Germaine
Apartments on Main Street
in downtown Houston.

Based on the information about the proposed deal
with appellant, Officer Romano set up a team of officers for the afternoon of
April 28.  Officer T.D. Galligan, who
subsequently made the traffic stop of appellant, was given a description of
appellant=s car;
Officer Galligan was stationed in a church parking lot near the corner of
Houston Avenue and Washington Street. 
Officer Romano wanted to corroborate the informant=s information, and he began his
surveillance at the Saint Germaine Apartments. 
At approximately the time that appellant was supposed to leave to meet
the informant, Officer Romano saw appellant leaving the apartment complex in a
four-door green Acura Legend.  Although
appellant  was seated in the car, he
appeared to match the physical description that the informant had given Officer
Romano.  Officer Romano followed
appellant and told Officer Galligan to stop appellant=s
car.

Officer Galligan testified that he made a traffic
stop of appellant because he saw that appellant had an expired inspection
sticker.  He said that he had been told to
stop the green Acura Legend because there was a possible narcotics suspect in
it.  After the stop, Officer Galligan
verified that the inspection sticker was expired.  Officer Galligan took appellant=s driver=s
license back to his patrol car to verify it; Officer Romano had arrived by then
and met Officer Galligan at the patrol car. 
Officer Romano estimated that he arrived about three minutes after
Officer Galligan made the stop.








Officer Galligan said that he placed appellant in
the back of his patrol car after Officer Romano arrived.[1]  Officer Galligan said that appellant was in
and out of the patrol car several times. 
Officer Romano first testified that appellant was outside of his vehicle
when Officer Romano first spoke with appellant but then said that appellant may
have been in the back of Officer Galligan=s
patrol car when he arrived.

When appellant learned that he was being detained
as part of a narcotics investigation, he insisted on speaking to Officer Romano
alone.  Officer Romano and appellant
visited away from the others, and appellant voluntarily signed a form
consenting to a search of his vehicle. 
When Officer Romano asked appellant if he had any large amounts of cash
on him, appellant said that he had about $3,500 in his pocket.  Officer Romano placed appellant back in
Officer Galligan=s patrol
car for safety purposes while Officer Romano searched appellant=s car. 
Although appellant said he did not have any contraband in his car,
Officer Romano found six ounces of cocaine inside appellant=s gym bag.  Officer Romano then advised appellant that he
was under arrest for possession of cocaine.

Officer Romano asked appellant if he had any more
narcotics at his home, and appellant said that he did.  Appellant signed a consent to search his
residence at the Saint Germaine Apartments. The officers discovered an
additional thirteen grams of cocaine and some marihuana in one of appellant=s apartments.

It is obvious from the record that appellant
agreed to cooperate with Officer Romano. 
Appellant gave Officer Romano credible information that led to the
arrest of another person for drugs within forty-five minutes after Officer Romano
arrested appellant.

After the hearing on appellant=s motion to suppress, the trial court
denied the motion without making any written findings.

Standard of Review








A trial court=s
ruling on a motion to suppress is reviewed for an abuse of discretion.  Balentine v. State, 71 S.W.3d 763, 768
(Tex. Crim.
App. 2002).  In reviewing a trial court=s ruling on a motion to suppress,
appellate courts must give great deference to the trial court=s findings of historical facts as long
as the record supports the findings.  Guzman
v. State, 955 S.W.2d 85, 87 (Tex. Crim. App. 1997).  Because the trial court is the exclusive
fact-finder, the appellate court reviews evidence adduced at the suppression
hearing in the light most favorable to the trial court=s
ruling.  Carmouche v. State, 10
S.W.3d 323, 327 (Tex.
Crim. App. 2000).  We also give deference
to the trial court=s rulings
on mixed questions of law and fact when those rulings turn on an evaluation of
credibility and demeanor.  Guzman,
955 S.W.2d at 89.  Where such rulings do
not turn on an evaluation of credibility and demeanor, we review the trial
court=s actions
de novo.  Id.; Davila v. State, 4 S.W.3d
844 (Tex. App.CEastland
1999, no pet.).  Although the legal issue
of probable cause to arrest is reviewed de novo in this case, the determination
of that issue turns on mixed questions of law and fact.

When the trial court does not make explicit
findings of fact, we review the evidence in the light most favorable to the
court=s ruling
and assume the court made findings that are supported by the record and
buttress its conclusion.  See
Carmouche, 10 S.W.3d at 327-28.  We
are obligated to uphold the trial court=s
ruling on appellant=s motion
to suppress if that ruling was supported by the record and was correct under
any theory of law applicable to the case. 
State v. Ross, 32 S.W.3d 853, 856 (Tex. Crim. App. 2000).

Warrantless Arrest for Expired Inspection
Sticker

In appellant=s
first issue, he argues that Officer Galligan did not have probable cause to
arrest appellant because Officer Galligan was not in a position to observe the
inspection sticker and that the inspection sticker had not in fact
expired.  Appellant asserts that A[i]t is undisputed that [a]ppellant was
immediately arrested by Galligan for having an expired inspection sticker,
placed in the latter=s
patrol unit, and was not free to leave.@  Based on this premise, appellant argues that
it was an immediate warrantless arrest by Officer Galligan, not an
investigative detention, and that the immediate warrantless arrest tainted
everything that followed.  We disagree. 








In Texas,
a police officer may arrest an individual without a warrant only if (1) there
is probable cause with respect to that individual and (2) the arrest falls
within one of the exceptions specified in Tex.
Code Crim. Proc. Ann. arts. 14.01-.04 (Vernon 2005 & Supp.
2005).  McGee v. State, 105 S.W.3d
609, 613-14 (Tex.
Crim. App. 2003); Stull v. State, 772 S.W.2d 449, 451 (Tex. Crim.
App. 1989).  Article 14.01(b)
provides:  AA
peace officer may arrest an offender without a warrant for any offense
committed in his presence or within his view.@

A police officer has the authority to stop and
temporarily detain a driver who has violated a traffic law.  Armitage v. State, 637 S.W.2d 936, 939
(Tex. Crim. App. 1982).  Any peace
officer may arrest, without a warrant, a person found committing a violation of
the Texas
traffic laws because a violation of the traffic laws constitutes probable cause
to arrest the violator.  Tex. Transp. Code Ann. ' 543.001 (Vernon
1999); State v. Gray, 158 S.W.3d 465, 469 (Tex. Crim. App. 2005);  Snyder v. State, 629 S.W.2d 930, 934
(Tex. Crim. App. 1982).

Appellant=s
arguments concerning whether Officer Galligan was in a position to observe the
inspection sticker as appellant drove past and whether the inspection sticker
had expired turn on the credibility and statements of the witnesses.  The trial court, as the trier of fact, was
the exclusive judge of the credibility of the witnesses and the weight to be
given to their testimony.  State v.
Ballard, 987 S.W.2d 889, 891 (Tex. Crim. App. 1999); Joseph v.
State, 897 S.W.2d 374, 376 (Tex. Crim. App. 1995).  Officer Galligan testified that appellant was
not traveling fast because there was a stoplight and that he saw that the
inspection sticker had expired.  After
the traffic stop, Officer Galligan verified that the inspection sticker had
expired and then asked for appellant=s
license.

Appellant called Greg Morrison, a worker at an
Express Lube, as a witness.  Morrison
testified that a vehicle inspection report was issued to a 1995 Acura Legend
with appellant=s license
number and that the inspection would have been valid on April 28, 2004.  However, Morrison stated that he did not know
if the inspection sticker was actually placed on appellant=s vehicle.  Tex.
Transp. Code Ann. '
548.602 (Vernon Supp. 2005) states that a person may not operate a motor vehicle
unless a current and appropriate inspection sticker is displayed on the
vehicle.  In its brief, the State
observes that appellant introduced a photograph of his car into evidence but
did not introduce a picture of his allegedly valid inspection sticker.

Based on Officer Galligan=s
testimony, the trial court may have decided that appellant was driving with an
expired inspection sticker despite Morrison=s
testimony and that the warrantless arrest was based on that traffic
violation.  Appellant=s first point of error is overruled.

Warrantless Arrest After Valid Detention

In his second issue, appellant argues that the
State failed to demonstrate that probable cause existed for his warrantless
arrest based on a confidential informant=s
tip.  The initial stop of appellant by
Officer Galligan, however, was justified either on the expired inspection
sticker or on the reasonable suspicion supplied by the credible and reliable
informant.  

Circumstances short of probable cause may justify
a temporary detention for the purpose of investigation.  Garza v. State, 771 S.W.2d 549, 558
(Tex. Crim. App. 1989).  A temporary
detention is justified when the detaining officer has specific articulable
facts which, taken together with rational inferences from those facts, lead him
to conclude that the person detained is, has been, or soon will be engaged in
criminal activity.  Woods v. State,
956 S.W.2d 33, 38 (Tex.
Crim. App.  1997).  A law enforcement officer may rely on
information given to him by another officer. Armendariz v. State, 123
S.W.3d 401, 404 (Tex.
Crim. App. 2003).

Officer Romano had worked with the confidential
informant on ten to fifteen previous occasions, and the informant had given him
credible and reliable information leading to the seizure of narcotics.  Officer Romano asked the informant to set up a
meeting with appellant for appellant to deliver six ounces of cocaine to the
informant.  The confidential informant
agreed to set up the meeting and described appellant, his car, when he would be
departing the Saint Germaine Apartments, and where the meeting would be
held.  Officer Romano confirmed all of
the information, except for the six ounces of cocaine, before he radioed
Officer Galligan to stop appellant=s
car.  There was reasonable suspicion for
the officers to engage in an investigative detention of appellant.








            Based on the evidence, the trial court did not abuse its
discretion in implicitly finding that there was probable cause or reasonable
suspicion to stop appellant=s
vehicle.  Even ignoring appellant=s written consent B which apparently was freely and
voluntarily given B it
appears that the officers had probable cause to search appellant=s car under these facts.  Probable cause to search exists when the
totality of the circumstances allows a conclusion that there is a fair
probability of finding contraband or evidence at a particular location.  Dixon
v. State, No. PD-1592-05, 2006 WL 1408451 (Tex. Crim. App. 2006).  As stated, Officer Romano verified the
informant=s
information before detaining appellant and searching his car.  See, e.g., Draper v. United States,
358 U.S. 307, 309-13 (1959);
Dixon,
2006 WL 1408451.

Officer Romano also obtained appellant=s written consent to search his car and
his residence.  That consent was freely
given.  Although appellant argues that he
had already been the subject of a warrantless arrest by Officer Galligan when
he gave his consent, the testimony is contradictory and confusing on when
Officer Galligan placed appellant under arrest. 
Although Officer Galligan did say that appellant was under arrest when
Officer Romano first spoke to appellant, other testimony (including various
statements by Officer Galligan) indicates that appellant may have been under
investigative detention when he gave his consent to search.  An investigative detention is a seizure under
which the citizen is not free to leave, but it must be reasonable under the
Constitutions of the United States
and Texas.  Francis v. State, 922 S.W.2d 176, 178
(Tex. Crim. App. 1996).  The detention
here was reasonable.  See State
v. Gray, 158 S.W.3d 465 (Tex.
Crim. App. 2005).

The trial court could reasonably have viewed the
stop of appellant as an investigative detention, his consent to search as
having been freely given, and the warrantless arrest having been based on the
cocaine found during the search.

We note that the totality of the circumstances in
this case are even more favorable to the State than those in Dixon. 
Here, Officer Romano had set up a purchase of cocaine from appellant
with the confidential informant to be the buyer.  After the stop, Officer Romano obtained
appellant=s written
consent to search his car and his residence. 
That consent was freely given. 
The six ounces of cocaine was found in appellant=s
car just as the confidential informant had stated it would be.

Viewing the evidence in its totality, the trial
court could have reasonably concluded that the warrantless arrest of appellant
was justified.  Appellant=s second point of error is overruled.

This Court=s
Ruling

The judgment of the trial court is affirmed.

 

TERRY McCALL

July 13,
2006                                                                           JUSTICE

Do not publish.  See
Tex. R. App. P. 47.2(b).

Panel
consists of:  Wright, C.J., and

McCall,
J., and Strange, J.











[1]Later, Officer Galligan said he placed appellant under arrest
and put him in the patrol car because Ahe was
being detained by the Narcotics Division.@  Officer Galligan also said that he placed
appellant in the backseat of his patrol car and that appellant was under arrest
for the expired inspection sticker.